COMMISSIONERS OF ROAD IMPROVEMENT DISTRICT NO. 2 OF LAFAYETTE COUNTY, ARKANSAS, *v.* ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 141. Argued January 26, 27, 1922.—Decided February 27, 1922.

1. A petition for removal to a federal court of a controversy over an assessment on particular lands, involved with others in a general proceeding for assessing all the lands within a road improvement district, was in time, under Jud. Code, § 29, when filed on the day before the day advertised for the hearing in the state court and on which the landowner was required by the state law to file his written objections. P. 551.

2. Under the law of Arkansas, the County Court approves a proposed road improvement district, which then becomes a corporation capable of suing and being sued; appoints, but cannot remove, the

6267°—22——40

governing commissioners; passes upon their plan of improvement
and estimate of cost; appoints assessors who assess the benefits and
damages to the several parcels of land included; hears and deter-
mines the justice of particular assessments upon written objections
filed by landowners affected, pursuant to published notice; equal-
izes, lowers and raises assessments; and levies a general assessment
upon all the land to be collected against the properties in propor-
tion to benefits thus adjudged by proceedings in a court of chan-
cery. Its findings and order are declared to have the effect of a
judgment against the property; and appeals from particular assess-
ments of benefits and damages may be taken by either the land-
owner or the commissioners to a court of general jurisdiction for
trial *de novo*. *Held*: That, while the proceedings in the County
Court are in the main legislative and administrative, a controversy
therein over the benefits and damages to an owner's land is a suit
at law within the removal act because, (*a*) its determination is
judicial, like a valuation of property in condemnation, p. 553; (*b*)
the issue is between adversary parties, the road district and the land-
owner, framed on pleadings, consisting of the assessment book
and the owner's objections, to be heard on evidence, and is separable
from like issues respecting other landowners, pp. 556, 559; and
(*c*) the County Court, in disposing of such issues, renders what is in
name, form, and effect a judgment; and functions as a judicial
tribunal under the Arkansas constitution. P. 556.
3. A decision of the state court on the nature of a proceeding under
the state statutes is not conclusive on the question of removability.
P. 558.
4. Section 28, Jud. Code, limiting removal to cases within the original
jurisdiction of the District Court under § 24, does not deprive a
defendant of the right merely because the form of the case in the
state court would be awkward in the federal court or require refram-
ing of the complaint and different procedure. P. 561.
5. Action of the District Court in withdrawing a case from the jury
and making findings of fact in the absence of a stipulation under
Rev. Stats. §§ 649, 700, but without objection or exception by the
parties, is not reviewable by writ of error. P. 562.
265 Fed. 524, affirmed.

Certiorari to a judgment of the Circuit Court of Appeals
affirming a judgment of the District Court for the re-
spondent railway company in a case involving a road im-
provement assessment removed from a state court.

*Mr. Henry Moore, Jr.,* for petitioner.

This proceeding is not a suit within the meaning of the federal removal acts. The County Court, in passing upon the benefits received from the building of the road, was acting in an administrative and not a judicial capacity, occupying the position and having the same authority as that of the Board of Supervisors under the constitution of Arkansas of 1868. Since the decision of this cause by the District Court, the Supreme Court of Arkansas has definitely so decided. *Horne* v. *Baker,* 140 Ark. 172. See also *In re City of Chicago,* 64 Fed. 897; *State* v. *Barker,* 116 Ia. 96. Distinguishing: *Drainage District* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 198 Fed. 253; *In re Mississippi Power Co.,* 241 Fed. 194; and *Smith* v. *Douglas County,* 254 Fed. 246.

Since the County Court, as a court under the constitution, has no authority over local assessment or over taxes, save county taxes, the legislature, under the state constitution, could not give the court jurisdiction in a judicial capacity to determine the amount of benefits received by lands within the road district. *Cribbs* v. *Benedict,* 64 Ark. 562.

The question at issue has been finally and definitely settled by *Upshur County* v. *Rich,* 135 U. S. 467.

Unless the assessors for the road district could have originally filed its report in the United States District Court and asked said court to raise or lower the various assessments, and exercise the authority given by statute to the County Court in its administrative capacity, then this cause could not be properly transferred, since the jurisdiction of the United States courts on removal is limited to such suits as might have been brought originally in said courts. *Cochran* v. *Montgomery County,* 199 U. S. 260; *In re Winn,* 213 U. S. 458; *Wall* v. *Franz,* 100 Fed. 681. Distinguishing *Madisonville Traction Co.* v. *St. Bernard Mining Co.,* 196 U. S. 239.

A state constitution may delegate to its courts either judicial powers alone or judicial, administrative and legislative powers, and although cases may be transferred from state to federal courts where judicial power is brought into question, such transfer may not be had where the powers are either legislative or administrative. *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210, 226.

If there exists the right to transfer each assessment of benefits amounting to more than $3,000 where the landowner is a nonresident then the wheels of justice may well be clogged with such administrative matters.

The courts of the United States follow the decisions of the courts of last resort in the several States in the matter of the construction of the state constitutions and statutes. The construction here is settled by *Missouri Pacific R. R. Co.* v. *Izard County Improvement District,* 143 Ark. 261, 267, and *Monette Road Improvement District* v. *Dudley,* 222 S. W. 59.

*Mr. J. R. Turney,* with whom *Mr. Daniel Upthegrove* was on the brief, for respondent.

MR. CHIEF JUSTICE TAFT delivered the opinion of the court.

The question in this case is whether a proceeding in a state county court to assess benefits and damages growing out of a road improvement was properly removed to the federal District Court.

The assessors appointed by the County Court of Lafayette County, Arkansas, for Road Improvement District No. 2, imposed an assessment on lands within the district, belonging to the St. Louis Southwestern Railway, a corporation of Missouri, of $49,706, for benefits from the projected improvement. The book of assessments for the District was filed by the District Commissioners in the office of the County Clerk and the day for

hearing objections by the land owners before the county court was duly advertised. On the day before the hearing, the Railway Company filed a petition for removal to the District Court for the Western District of Arkansas with the necessary bond. That court denied a motion to remand, tried the controversy between the Commissioners of the Road District and the Railway Company, reduced the assessment to $10,485.48, entered judgment therefor and certified the same to the county court. On error, the Circuit Court of Appeals affirmed the judgment, and the case is here on certiorari.

Under § 28 of the Judicial Code, a suit at common law or in equity between citizens of different States, involving more than $3,000, may be removed by the nonresident party to the proper federal district court. Under § 29 the petition for removal must be filed on or before the day when defendant is required to answer. The petition herein was filed the day before the hearing as advertised, upon which day the land owner is required by state law to file his written objections. Thus, the requisites of the removal statute were fulfilled if the proceeding was a suit at common law in a state court.

Road District Improvements are provided for in c. 81, Title VII, Crawford and Moses, Statutes of Arkansas. A district is formed upon a petition of a majority of the land owners by the County Court's approval of the district and the projected improvement. C. & M., § 5399. The district then becomes a corporation, with a seal and capable of contracting and suing and being sued. C. & M., § 5402 and § 5404. The court appoints three commissioners, who are the governing body of the corporation. C. & M., § 5405 and § 5407. After appointment, they can not be removed by the County Court, but are independent. *Taylor* v. *Wallace*, 143 Ark. 67. They submit to the County Court a plan for the improvement and estimate its cost. C. & M., §§ 5409-5419. The County Court

then appoints three assessors whose duty it is to assess the enhanced value which the improvement will give to the various lots of real estate (C. & M., §§ 5419, 5421) as well as the damages, if any, " by reason of right-of-way taken, or other damage sustained." C. & M., §§ 5419, 5421, 5422. The damages " may be paid out of the funds of the district, or by a reduction in the assessment of benefits in proportion to the amount of damages sustained." C. & M., § 5422. The assessments of benefits and damages are noted by the assessors in a permanent book. C. & M., § 5421. The subsequent proceedings as to hearing and judgment are set forth in C. & M., §§ 5423 and 5424, given below in the margin.[1]

Appeals from the judgment of the County Court as to assessments of benefits and damages may be taken to the Circuit Court, the court of general jurisdiction, either by the owner or the Commissioners of the District " by filing an affidavit for appeal and stating therein the special matter appealed from, but such appeal shall affect only the particular tract of land . . . concerning which said appeal is taken." C. & M., §§ 5425, 5427. *Wapponocca Outing Club* v. *Road Improvement District,* 135 Ark. 196. The Circuit Court tries all such appeals

---

[1] C. & M. § 5423. Equalization of assessments. As soon as the assessors have completed the work of assessment for the district, they shall certify to same and deliver it to the board of commissioners. The commissioners shall immediately file same in the office of the county clerk, and the county clerk of said county shall give public notice by two consecutive insertions in a publication having a general circulation in said county. Said notice shall give a description of all lands embraced in said district in the largest subdivisions practicable and shall state said assessment of benefits and damages has been filed in said office and shall call upon any person, firm or corporation aggrieved by reason of any assessment to appear before the county court on some date to be fixed by the court not less than five days after the last insertion therein, for the purpose of having any errors adjusted, or any wrongful or grievous assessment corrected,

*de novo* as if originally brought in that court, C. & M., § 2236; and the judgment is in the same form as in the inferior court.   *Wilson* v. *Hinton,* 63 Ark. 145.

Just as soon as the assessment book is filed in the office of the county clerk who is ex officio clerk of the County Court, and the Commissioners submit the estimate of cost of the improvement, the County Court, pending its hearing of objections to assessments, levies an assessment against all the real property in the district, adding ten per cent. to the estimated cost for contingencies, to be collected against the properties in proportion to the benefits then to be adjudged.   C. & M., § 5432.   The assessments thus determined and confirmed become liens on the property affected, and unless paid, are collected through equitable proceedings brought by the Commissioners of the Road District to sell in the Chancery Court.   C. & M., § 5437.

This review shows that the proceedings for the making of this road improvement are in the main legislative and administrative.   There is, however, one step in them that fulfills the definition of a judicial inquiry if made by a court.   That is the determination of the issue between

---

and all grievances or objections to said assessment shall be presented to said court in writing.   Any person who is damaged by reason of said improvement may appear before said court at the same time, for the purpose of having the assessment of damages adjusted. The county court shall hear and determine the justness of any assessment of benefits or damages, and is hereby authorized to equalize, lower or raise any assessment upon a proper showing to the court.

C. & M. § 5424.   Judgment of county court.   At the hearing provided for in the preceding section and after the county court shall have considered the assessment of benefits, it shall enter its findings thereon, either confirming the assessment of benefits against said property, increasing or diminishing same, and the order made by the county court shall have all the force and effect of a judgment against all real property in said district, and it shall be deemed final, conclusive, binding and incontestable except by direct attack on appeal.

the Road District on the one part and the land owners on the other, as to the respective benefits which the improvement confers on their lands, and the damages they each suffer from rights of way taken and other injury.

The distinction between a proceeding which is the exercise of legislative power and of administrative character and a judicial suit is not always clear. An administrative proceeding transferred to a court usually becomes judicial, although not necessarily so. In *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210, 225, 226, this court said:

"We shall assume that when, as here, a state constitution sees fit to unite legislative and judicial powers in a single hand, there is nothing to hinder' so far as the Constitution of the United States is concerned. . . . A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter."

The inquiry before the County Court is a proceeding to declare and enforce a liability of lands and their owners as it stands on present and past facts under a law and rules already made by the legislature and the administrative officers.

The determination of benefits in such cases is quite like the valuation of property under condemnation proceedings. "The true inquiry is, what will be the effect of the proposed improvement upon the market value of the real property, including the buildings thereon. The board may consider what the property is then fairly worth in the market, and what will be the value when the improvement is made." *Kirst* v. *Street Improvement District,* 86 Ark. 1; *Rogers* v. *Highway Improvement District,* 139 Ark. 322. Assessments for benefits and damages are dif-

ferent in their essential characteristics from those for general taxation. *Paving District* v. *Sisters of Mercy,* 86 Ark. 109. Though due process of law does not necessarily require judicial machinery to fix values in condemnation, still because of the direct invasion of private right, courts will treat it as a common-law suit whenever it is brought before a court and it becomes removable as such to the federal court. *Boom Co.* v. *Patterson,* 98 U. S. 403; *Searl* v. *School District No. 2,* 124 U. S. 197; *Madisonville Traction Co.* v. *St. Bernard Mining Co.,* 196 U. S. 239. Speaking of the power of eminent domain, Mr. Justice Field, in *Boom Co.* v. *Patterson, supra,* said:

" But notwithstanding the right is one that appertains to sovereignty, when the sovereign power attaches conditions to its exercise, the inquiry whether the conditions have been observed is a proper matter for judicial cognizance. If that inquiry take the form of a proceeding before the courts between parties,—the owners of the land on the one side, and the company seeking the appropriation on the other,—there is a controversy which is subject to the ordinary incidents of a civil suit, and its determination derogates in no respect from the sovereignty of the State."

This principle has been extended by this court to benefits set off against damages in *Pacific Railroad Removal Cases,* 115 U. S. 1, 18. In that case the proceeding was for widening a street running through the grounds of a railway company. Under the statute, the hearing was first before the Mayor and a jury who were to determine the actual damage done to each person in consequence of the taking of his property, without reference to the proposed improvement, and, second, to determine the actual benefits conferred upon the City and upon such private property. This court held that the proceeding before the Mayor and common council was only a preliminary inquisition, but that the distinct and separable issues in the

state circuit court between the City and the private owner as to the value of his property taken for the street, and the amount of benefit his remaining property received from the improvements, constituted "a suit" which might be removed to the federal court, even though their determination might delay the state court proceedings. The case rules the one before us so far as the character of the controversy is concerned. We have the same issues here and they are just as separable from benefits and damages of the other owners.

The County Court in hearing this controversy was a judicial tribunal from the time the Commissioners filed the book of assessments in its clerk's office and asked its confirmation. The constitution of 1874 of Arkansas, now in force, declares, in § 1, Article VII, entitled the Judicial Department, that,

"The judicial power of the State shall be vested in one Supreme Court; in Circuit Courts; in County and Probate Courts; and in Justices of the Peace."

Section 28 of the same article provides that,

"The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. The county court shall be held by one Judge, except in cases otherwise herein provided."

The exclusive jurisdiction of the County Court conferred by § 28, concerns matters which are primarily of an administrative character but which often involve judicial inquiry and action *inter partes*. The County Court may act therein as an administrative body or as a court. The Supreme Court of Arkansas has held the County Court to be a court and capable of rendering judgment in a

proceeding whose judicial character is much more questionable than here.   In *Nevada County* v. *Hicks,* 50 Ark. 416, it decided that every allowance of a claim by the County Court against the county was a judicial order.   See *Chicot County* v. *Sherwood,* 148 U. S. 529, 532; *Delaware County v. Diebold Safe Co.,* 133 U. S. 473.

C. & M. § 5424, quoted above in the margin, directs that after the hearing, the County Court shall make its findi·gs, either confirming the assessments of benefits and damages, increasing or diminishing them, and that the order made by the County Court shall have " all the force and effect of a judgment against all real property in said district, and it shall be deemed final, conclusive, binding and incontestable except by direct attack on appeal."   The form of the order of the County Court in this case made after removal, was " It is further considered, ordered and adjudged by the court that the assessment of benefits made against the St. Louis Southwestern Railway Company . . . by the assessors for said district be approved and confirmed by the court."   Of course, the statutory designation of the action of a body as a judgment, or the phrasing of its finding and conclusion in the usual formula of a judicial order, is not conclusive of the character in which it is acting.   When we find, however, that the proceeding before it has all the elements of a judicial controversy (*Gaines* v. *Fuentes,* 92 U. S. 10, 20), to wit, adversary parties and an issue in which the claim of one of the parties against the other capable of pecuniary estimation, is stated and answered in some form of pleading, and is to be determined, we must conclude that this constitutional court is functioning as such.

But it is said that the State Supreme Court has held otherwise and that such a decision is binding on us.   The question of removal under the federal statute is one for the consideration of the federal court.   It is not concluded

by the view of a state court as to what is a suit within the statute. *Upshur County* v. *Rich,* 135 U. S. 467, 477; *Mason City & Ft. Dodge R. R. Co.* v. *Boynton,* 204 U. S. 570; *Madisonville Traction Co.* v. *St. Bernard Mining Co.,* 196 U. S. 239. While the decision of the state court as to the nature of a proceeding under state statutes sought to be removed is, of course, very persuasive, it is not controlling because involved in the application of a federal statute and the exercise of a federal constitutional right. The issue as to removal is akin to the question, which sometimes arises in enforcing the inhibition against state laws impairing the obligation of a contract, whether there is a contract under state law. This court decides that for itself. *University* v. *People,* 99 U. S. 309; *Jefferson Branch Bank* v. *Skelly,* 1 Black, 436; *Bridge Proprietors* v. *Hoboken Co.,* 1 Wall. 116; *Delmas* v. *Insurance Co.,* 14 Wall. 661.

The decision of the Supreme Court of Arkansas relied on is *Missouri Pacific R. R. Co.* v. *Izard County Improvement District No. 1,* 143 Ark. 261, in which it was held that a proceeding like the one before us in the County Court could not be removed to the federal court because "the duties which this statute devolves upon the county court, as already stated, are administrative and not judicial, although the line of demarcation is very close."

The court further said:

" It will be observed that the power conferred by our statute upon the county court is not to determine whether there should be any assessment, but to equalize and adjust the assessment that has been made by the commissioners. There is nothing in the nature of an adversary proceeding, *inter partes,* in the assessment made by the commissioners and equalized and adjusted by the county court under the authority of the statute."

Our examination of the question leads us to a different conclusion. The book of assessments made by the as-

sessors, as already noted, is presented by the Commissioners of the District as an independent body, representing a fully equipped municipal corporation, capable of contracting and of suing and being sued, to the County Court. They are plaintiffs and petitioners, asking the court to give them a judgment confirming the assessments. The court's record in this case shows them present in person and by counsel praying confirmation.

The statute does not define how the hearing before the county court is to be conducted except that the objections of the land owners are to be in writing, as the book of assessment is. These two documents make the pleadings. It is to be inferred in the absence of any restriction that oral evidence is to be heard on the issues raised by the objections and that the Commissioners in person or by attorney may take part in the hearing. Indeed it was admitted by counsel at the hearing that this is the practice. The proceeding is said to be only equalization but we have already seen that each lot is to be separately considered as to benefits and damages, on appeal. If so, why not on removal? We conclude that the proceeding is adversary and *inter partes.*

The state court really decides that the issue as to the correctness of assessments of benefits and damages is always legislative and administrative. It relies chiefly on two federal authorities. *Upshur County* v. *Rich,* 135 U. S. 467, and *In re City of Chicago,* 64 Fed. 897. In the former, the county assessors of a county in West Virginia had valued for general taxation a large tract of wild land at a figure its owners deemed excessive. They filed a petition in the County Court asking a reduction and immediately filed another petition for removal of the proceeding to the federal court on the ground of diverse citizenship. This court held on appeal from the Circuit Court, which had denied a motion to remand, that the removal could not be sustained. It said that such assessment of a

general tax was an administrative act, that the County
Court in considering the appeal from the assessors was
not a court, and that the proceeding was not adversary or
a suit " though approaching very near to the line of de-
marcation " (p. 472).　The County Court in West Vir-
ginia had no judicial jurisdiction under the constitution
of the State except that of probate.　It had had in the
past other judicial jurisdiction but an amendment of the
constitution had taken this away and it was empowered
only to exercise duties " not of a judicial nature."

Mr. Justice Bradley, who spoke for the court in the
*Pacific Railroad Removal Cases, supra,* also delivered the
opinion in the *Upshur County Case,* and summed up the
conclusion as follows:

" The principle to be deduced from these cases is, that
a proceeding, not in a court of justice, but carried on by
executive officers in the exercise of their proper functions,
as in the valuation of property for the just distribution of
taxes or assessments, is purely administrative in its char-
acter, and cannot, in any just sense, be called a suit; and
that an appeal in such a case, to a board of assessors or
commissioners having no judicial powers, and only au-
thorized to determine questions of quantity, proportion
and value, is not a suit; but that such an appeal may be-
come a suit, if made to a court or tribunal having power
to determine questions of law and fact, either with or
without a jury, and there are parties litigant to contest
the case on the one side and the other."

The manifest distinctions between the *Upshur County
Case* and this are, first, that the question here is not one of
general taxation, the difference between which and as-
sessments for benefits and damages we have already
pointed out; second, that the County Court of Arkansas,
differing from the West Virginia County Court, is a court
and by the constitution of the State may exercise judicial

functions in such subjects matter; and, third, that the proceeding is *inter partes.*

The other federal case upon which the State Supreme Court relies, *In re City of Chicago, supra,* was a decision of the Circuit Court in a sewer assessment case involving the fixing of benefits which were to be equalized over a district which the assessors found to be fair. The court held it could not be removed from the county court, first, because such an assessment was a mere administrative act, an exercise of the taxing power, and, second, because the benefits could only be fixed with reference to the benefits to all other lots, and the whole case must be removed, if removed at all. The court with difficulty distinguished the *Pacific Railroad Removal Cases,* on the ground that that was a separate investigation as to each lot and that it was mingled with the fixing of damages. These are features which distinguish this proceeding also. Moreover, the case has been criticized and its authority shaken. *In re Stutsman County,* 88 Fed. 337, 341; *In re Jarnecke Ditch,* 69 Fed. 161; *Drainage District No. 19* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 198 Fed. 253, 260.

The next objection is that the Road District Commissioners could not file their assessment book in the federal court, assuming the necessary diverse citizenship, against any lot or lot owner, and so that the inquiry cannot be removed, because, under § 28 of the Judicial Code, removal is limited to cases within the original jurisdiction of the District Court under § 24. This limitation is not intended to exclude from the right of removal defendants in cases in the state court which because of their peculiar form would be awkward as an original suit in a federal court, or would require therein a reframing of the complaint and different procedure. *Sheffield Furnace Co.* v. *Witherow,* 149 U. S. 574, 579; *Fleitas* v. *Richardson, No. 1,* 147 U. S. 538, 544. The limitation is that only those

proceedings can be removed which have the same essentials as original suits permissible in District Courts, that is that they can be readily assimilated to suits at common law or equity, and that there must be diverse citizenship of the parties and the requisite pecuniary amount involved. *In re Stutsman County,* 88 Fed. 337; *Madisonville Traction Co.* v. *St. Bernard Mining Co.,* 196 U. S. 239, 246; *Searl* v. *School District No. 2,* 127 U. S. 197; *Colorado Midland Ry. Co.* v. *Jones,* 29 Fed. 193.

It is finally contended that the judgment of the District Court should be reversed because it withdrew the case from the jury and then proceeded to make findings. No objection was taken by either party to this course and no exception was taken. Section 649, Rev. Stats., provides that a civil case in the District Court may be tried without the intervention of a jury on a written stipulation of the parties or their attorneys filed with the clerk, in which case the finding of the court on the facts, either general or special, shall have the same effect as the verdict of a jury, and by § 700, Rev. Stats., bills of exceptions may bring such findings before the Circuit Court of Appeals for review on the evidence. But if there be no written stipulation of waiver of a jury, then no questions can arise on writ of error except those which arise on the process, pleadings or judgment. *Bond* v. *Dustin,* 112 U. S. 604; *Ladd & Tilton Bank* v. *Hicks Co.,* 218 Fed. 310; *Ford* v. *United States,* 260 Fed. 657. The Circuit Court of Appeals, therefore, rightly held that no error could be predicated on the action of the District Judge in withdrawing the case from the jury and making findings without objection or exception by the parties.

The judgment of the Circuit Court of Appeals is

*Affirmed.*

Mr. Justice Pitney took no part in the consideration or decision of this case.