**Thomas A. MONAHAN,**
**Plaintiff/Petitioner,**

v.

**Babette HOLMES,**
**Defendant/Respondent.**

**No. Civ. 3:00CV1058(GLG).**

United States District Court,
D. Connecticut.

March 30, 2001.

*OPINION*

GOETTEL, District Judge.

Plaintiff/Petitioner Thomas A. Monahan initiated this action in the Probate Court of Fairfield County on May 25, 2000, seeking acceptance of his accounting, pursuant to Connecticut General Statutes section 45a–175(b), as co-trustee of the Babette Holmes Trust, an inter-vivos trust dated February 8, 1982. Defendant/Respondent Babette Holmes, the grantor, co-trustee, and sole beneficiary of the trust, removed the action to this Court on June 9, 2000, pursuant to 28 U.S.C. § 1441(a), invoking the Court's diversity jurisdiction.

Plaintiff now moves this Court to remand the action to the state court [**Doc. # 10**]. Defendant moves to dismiss the action [**Doc. # 15**], arguing that the Probate Court lacks subject matter jurisdiction and personal jurisdiction over the Defendant due to insufficient service of process and lack of minimum contacts with the forum state. In addition, Plaintiff moves to stay the proceedings [**Doc. # 22**] in this Court pending the outcome of an proceeding to determine the Defendant's mental capacity currently before a Florida state court.

For the reasons set forth below, the Court DENIES Plaintiff's motion to remand [**Doc. # 10**], DENIES Defendant's amended motion to dismiss [**Doc. # 15**], DENIES AS MOOT Defendant's original motion to dismiss [**Doc. # 5**], and GRANTS Plaintiff's motion for a stay of proceedings [**Doc. # 22**].

### BACKGROUND

Defendant, a Florida resident, created the trust in question on February 8, 1982, acting as co-trustee with her brother, now deceased. She executed the First Amendment to the trust on June 25, 1986 with the written consent of her co-trustee, revoking

all the provisions of the original trust and substituting new provisions. She executed the Second Amendment to the trust on September 18, 1995, naming the Plaintiff as successor co-trustee following the death of her brother. Plaintiff, a Connecticut resident, was allegedly a family friend and stockbroker already responsible for investing a portion of the trust assets.

## I. MOTION TO REMAND

██ The Court first considers Plaintiff's motion to remand. A district court may remand an action only when it lacks subject matter jurisdiction or when there is a procedural defect. *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 342–43, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976). In deciding whether to grant a motion to remand, the first inquiry is whether the case originally filed in the state forum was properly removed to the federal court. The propriety of removal is determined as of the time of removal. The relevant statutory authority, 28 U.S.C. § 1441(a), provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to the district court. 28 U.S.C. § 1441(a). The parties do not dispute that this Court would have had original jurisdiction of this action based on diversity jurisdiction pursuant to 28 U.S.C. § 1332, due to the diversity of citizenship of the parties and the satisfaction of the amount in controversy requirement.

### A. Civil Action

██ Plaintiff first argues that the Defendant's petition for allowance of account is not a civil action subject to removal because it was not commenced by the filing of a complaint. *See* Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."). Plaintiff argues that because he commenced his "action to submit an accounting," Conn.Gen.Stat.

§ 45a–175(d), by filing a petition with the probate court rather than by filing a complaint, the action must not qualify as a civil action subject to removal. We disagree. Rule 3 does not state that the exclusive method for initiating a civil action is the filing of a complaint. Indeed, Rule 81(c), which governs procedure after removal of civil actions from state courts to federal district courts, refers not to a complaint but to "the initial pleading setting forth the claim for relief upon which the action or proceeding is based...." An initial pleading in the probate court, for example, a petition to bring an action to submit an accounting, commences a civil action or proceeding in state court (subject to removal), just as a complaint commences a civil action in federal court.

██ Federal law, not state law, determines whether the state court action is a "civil action" within the meaning of the diversity jurisdiction statute. *See Commissioners of Rd. Improvement Dist. No. 2 v. St. Louis Sw. Ry. Co.,* 257 U.S. 547, 557–58, 42 S.Ct. 250, 66 L.Ed. 364 (1922). Cases which "because of their peculiar form would be awkward as an original suit in a federal court" are not excluded from removal. *Id.* at 561, 42 S.Ct. 250. A defendant may remove a proceeding with "the same essentials as original suits permissible in District Courts; that is that they can be readily assimilated to suits at common law or equity, and that there must be diverse citizenship of the parties and the requisite pecuniary amount involved." *Id.* at 562, 42 S.Ct. 250. "[S]uits of a civil nature ... are those which do not involve criminal prosecution or punishment, and which are of a character traditionally cognizable by courts of common law or equity." *Milwaukee County v. M.E. White Co.,* 296 U.S. 268, 271, 56 S.Ct. 229, 80 L.Ed. 220 (1935). This action clearly involves no criminal prosecution, and the

relief sought is the type traditionally sought in courts of equity.

In support of his argument, Plaintiff maintains that other courts have rejected removal of non-complaints in bankruptcy cases and petitions to obtain discovery. Plaintiff points to *Easley. v. Pettibone Michigan Corp.*, 990 F.2d 905, 912 (6th Cir.1993), in which the court, while noting the "significant differences between a bankruptcy claim and a civil complaint," remanded the case because the bankruptcy petition was filed in violation of an automatic stay and was thus void. Plaintiff also relies on *In re Matter of Hinote*, 179 F.R.D. 335, 335–36, (S.D.Ala.1998), in which the court held that a pre-litigation petition to obtain discovery was not removable. Plaintiff also relies on *In re Auerbacher*, 616 F.Supp. 532, 533–34 (E.D.Pa.1985), in which the court remanded a trust audit proceeding to state court because the petition did not adequately allege a federal basis for jurisdiction. The court noted in dicta that it would have abstained even if it had determined that jurisdiction existed, because the state court from which the proceeding was removed had exclusive jurisdiction over trusts and estates disputes. *Id.* at 534. These cases, however, are inapposite to the instant action, which involves neither a bankruptcy petition nor a pre-litigation petition for discovery. Furthermore, the notice of removal alleges a sufficient basis for federal diversity jurisdiction, and, as discussed below, the Connecticut probate courts do not have exclusive jurisdiction over inter vivos trust disputes.

Based on the type of relief sought in this action and the adversarial nature of the proceeding, we find that the action to submit an accounting is a civil action and, therefore, is subject to removal in accordance with the procedures set forth in 28 U.S.C. § 1446.

## B. *Princess Lida* Doctrine

 Plaintiff next argues that the Court's jurisdiction over the dispute is barred by the *Princess Lida* doctrine because the probate court has exclusive jurisdiction over the trust. Under the *Princess Lida* doctrine, a court is divested of jurisdiction in an *in rem* or *quasi in rem* action when another court has taken possession or control of the property in question in a prior, similar proceeding. *See Princess Lida v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939). Thus, a state court first assuming jurisdiction over the administration of a trust may maintain and exercise that jurisdiction to the exclusion of a federal court, where: (1) the state court action was filed first; (2) the state court has the power to adjudicate all the claims effectively; and (3) under state law, the state court has exclusive or continuing jurisdiction over the trust. *Barnes v. Brandrup*, 506 F.Supp. 396, 400 (S.D.N.Y.1981); *Schonland v. Schonland*, Civ. No. 397CV558(AHN), 1997 WL 695517, at *2 (D.Conn. Oct. 23, 1997).

The *Princess Lida* doctrine is not applicable in this case because "the jurisdiction of probate courts in Connecticut is not exclusive or continuing, but is concurrent with that of the ordinary courts of equity." *Schonland*, 1997 WL 695517, at *2; *Second Nat'l Bank of New Haven v. Harris Trust & Sav. Bank*, 29 Conn.Supp. 275, 288, 283 A.2d 226 (Conn.Super.Ct.1971); *see also* Conn.Gen.Stat. § 45a–175(d) ("The action to submit an accounting to the court, whether by an inter vivos trustee . . . or whether pursuant to petition of another party, shall not subject the trust or the power of attorney to the continuing jurisdiction of the probate court."). The Plaintiff's motion to remand based on the *Princess Lida* doctrine is denied.

## C. Defendant's Mental Capacity

Plaintiff next argues that the Defendant lacks mental capacity to remove the action and urges this Court to hold an evidentiary hearing to determine whether the Defendant is incompetent and to appoint a guardian ad litem if necessary. In effect, Plaintiff equates the Defendant's capacity to remove with her capacity to sue or be sued.

■ Capacity has been defined as "the legal ability of a particular individual or entity to sue in, or to be brought into, the courts of a forum." Black's Law Dictionary 297 (6th ed.1990). Mental capacity or competence is the "ability to understand the nature and effect of the act in which a person is engaged and the business he or she is transacting." Id. at 986. Capacity is a procedural, not a jurisdictional, issue. Van Dusen v. Barrack, 376 U.S. 612, 616–24, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); see also 6A Charles A. Wright, Arthur R. Miller & Mary Kane Kane, Federal Practice and Procedure § 1559 (2d ed.1990).

Defendant maintains that she is assumed to be competent until incompetency is established by due process of law. This argument begs the very question this Court has been asked to determine, viz., the Defendant's mental capacity or lack thereof, an issue which the Plaintiff raised by specific negative averments in accordance with Rule 9(a) of the Federal Rules of Civil Procedure.

Ordinarily, when counsel suggests that a party is incompetent, a court must take proper steps to determine the question. The procedures followed by the court must comply with the Due Process Clause, because "a litigant possesses liberty interests in avoiding the stigma of being found incompetent, and in retaining personal control over the litigation." Neilson v. Colgate–Palmolive Co., 199 F.3d 642, 651 (2d Cir.1999) (citation omitted). "Due process is flexible and call for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Thus, we must consider the particular facts of this case in determining what procedures are necessary to protect the Defendant's interests in this action.

■ "The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile." Fed.R.Civ.P. 17(b). Because Defendant is a Florida domiciliary, we look to Florida law to determine her capacity to sue or be sued. Under Florida law, an individual is presumed to be competent unless incompetency is established by due process of law. Harmon v. Williams, 596 So.2d 1139, 1142 (Fla.Dist. Ct.App.1992). Florida law sets forth mandatory requirements for the adjudication of incapacity and the appointment of guardians. See Fla.Stat. § 744.331. The party asserting the lack of capacity bears the burden of establishing the partial or total incapacity by clear and convincing evidence at an adjudicatory hearing. Fla. Stat. § 744.331(5)(c).

In support of his argument, Plaintiff has submitted four reports of independent examinations by an examining committee composed of psychologists and licensed social workers, ordered by the Florida circuit court in a proceeding to determine incapacity of the Defendant currently pending before that court. These reports recommend plenary guardianship due to lack of capacity in various areas based on detailed evaluations of the Defendant's physical and mental condition. A fifth report, also submitted by the Plaintiff, was prepared by a psychiatrist allegedly hired by a friend of the Defendant. That report is inconclusive as to the Defendant's incapacity. We note that the Florida circuit court has stricken the first four reports and ordered

a new examining committee formed, because the Defendant was denied the assistance of her chosen counsel during the incompetency examinations.

In defense of her competency, Defendant has submitted a Florida appellate court opinion which, she claims, holds that she is not incompetent. *See Holmes v. Burchett,* 766 So.2d 387 (Fla.Dist.Ct.App. 2000). We do not read that opinion as so holding. Rather, the appellate court vacated the trial court's order determining incapacity because the trial court failed to hold the adjudicatory hearing which is mandatory under Florida law. The appellate court ordered the circuit court to "proceed forthwith to a determination in the incapacity proceeding." *Id.* at 388. That proceeding is still pending. *See In re Babette Holmes,* (Fla.Cir.Ct. No.2000GA000522NC, Docket Information, <http://www.clerk.co.sarasota.fl.us>).

Because the state court proceeding concerns the very issue we have been asked to decide, we need not hold an incapacity hearing or order further psychological examinations in order to protect the Defendant's interests in this litigation. We are bound to extend full faith and credit to the Florida court's judgment on this issue. If the Florida court determines that the Defendant lacks mental capacity, a guardian ad litem or representative will be substituted for the Defendant pursuant to Rule 25 of the Federal Rules of Civil Procedure, which provides for the substitution of a representative if a party becomes incompetent.

 In any event, we cannot say that the Defendant's removal of the action to this Court was improper at the time of removal. A finding of incapacity would not deprive this Court of subject matter jurisdiction over the removed action, nor would it constitute a defect in the removal procedure.

Moreover, we perceive no non-statutory grounds for remand to the state court. The Defendant's interests in this litigation will be no better served in the state court than in this Court, should she be proven incapacitated. The Plaintiff argues that a guardian ad litem, if eventually appointed, might wish to "withdraw" the notice of removal. We know of no procedural basis for such a withdrawal, however, and we find Plaintiff's argument without merit. The motion to remand on this basis is denied.

### D. Abstention Doctrine and Probate Exception

 Plaintiff also argues that the court should abstain from asserting jurisdiction over the trust accounting action under the abstention doctrine and the probate exception to diversity jurisdiction. The probate exception is "one of the most mysterious and esoteric branches of the law of federal jurisdiction." *Ashton v. Josephine Bay Paul & C. Michael Paul Foundation, Inc.,* 918 F.2d 1065, 1071 (2d Cir.1990) (quoting *Dragan v. Miller,* 679 F.2d 712, 713 (7th Cir.1982)) (Posner, J.). According to the probate exception, a federal court has no jurisdiction to probate a will, administer an estate, or entertain any action that would interfere with probate proceedings pending in a state court or with its control over property in its custody. *See, e.g., Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946); *Dulce v. Dulce,* 233 F.3d 143, 145 (2d Cir.2000); *Ashton,* 918 F.2d at 1071; *Schonland v. Schonland,* 1997 WL 695517 (D.Conn.1997). The probate exception does not apply to trusts, *Barnes v. Brandrup,* 506 F.Supp. 396, 399 (S.D.N.Y. 1981), and thus, does not limit this Court's jurisdiction in the instant matter.

 Under the abstention doctrine, a court may decline to assert subject matter

jurisdiction in a matter otherwise properly before it. Abstention is appropriate only in exceptional circumstances, confined to three general categories: (1) "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law," *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); (2) in cases presenting "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," *id.,* and (3) in cases where, "absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings; state nuisance proceedings antecedent to a criminal prosecution, . . . or collection of state taxes." *Id.* at 816, 96 S.Ct. 1236 (internal citations and footnote omitted). None of these categories for abstention apply in this case, nor are the legal questions presented "more complex or unfamiliar than questions involving obligations of fiduciaries faced by the federal courts in a variety of contexts." *Barnes,* 506 F.Supp. at 404. Keeping in mind "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236, the Court will not abstain from exercising subject matter jurisdiction over this matter.

For all the foregoing reasons, the plaintiff's motion to remand is DENIED.

## II. MOTION TO DISMISS

Defendant moves to dismiss the action, arguing that the Connecticut probate court lacks subject matter jurisdiction over the trust, and that the Connecticut probate court and this Court lack personal jurisdiction over her due to insufficient service of process, failure to comply with the long arm statute, and lack of minimum contacts

with Connecticut. Defendant also appears to argue that venue is improper in Connecticut, urging the Court to transfer the action to Florida.

Plaintiff argues that the Connecticut probate court does have subject matter jurisdiction over the trust and personal jurisdiction over the Defendant, and also that venue is proper in the this district.

This Court need not concern itself with the jurisdiction of the state court. We will assume, therefore, that the parties intended to address their jurisdictional arguments to this Court.

### A. Subject Matter Jurisdiction

■ This Court's subject matter jurisdiction is not derivative of the state court's subject matter jurisdiction over the removed action. *See* 28 U.S.C. § 1441(e) ("The court to which such civil action is removed is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."). We have already determined that our assertion of subject matter jurisdiction over this action is proper under the Court's diversity jurisdiction, because of the diversity of citizenship of the parties and the satisfaction of the amount in controversy requirement.

### B. Personal Jurisdiction

Defendant also argues that this Court lacks personal jurisdiction over her because none of the provisions of Connecticut's long-arm statute apply to her. She further maintains that she has no contacts with Connecticut, and that any assertion of personal jurisdiction would violate her constitutional due process rights. Finally, she contends that the service of process was insufficient. We examine each contention in turn.

*1. Compliance with the long-arm statute*

 The Defendant first disputes the statutory basis for this Court's exercise of personal jurisdiction over her. In cases invoking diversity jurisdiction, a court applies the law of the forum in which it sits in order to determine whether it may exercise personal jurisdiction over a defendant. *CutCo Indus.*, 806 F.2d at 365 (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir.1963)). Under Connecticut law, in determining whether a court has personal jurisdiction over a non-resident individual, the court must first determine whether the state's long-arm statute is satisfied; if so, the court must then decide whether that exercise of jurisdiction would offend the due process clause of the Fourteenth Amendment. *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 81 (2d Cir.1995). Long arm statutes provide for personal jurisdiction, via substituted service of process (for example, by personal service in another state, by mail to the non-resident's last-known address, or by publication) over non-resident individuals or entities. *See* Black's Law Dictionary 942 (6th ed.1990).

 In an action such as this one, however, the Court's jurisdiction is *in rem* or *quasi in rem*, and thus, we do not seek to exercise *in personam* jurisdiction over the defendant via the long-arm statute. The Connecticut Supreme Court addressed the "unusual nature" of a similar action for accounting in *United States Trust Co. v. Bohart*, 197 Conn. 34, 39, 495 A.2d 1034 (1985). In that case, the Court upheld the trial court's exercise of personal jurisdiction over the non-resident beneficiaries of an inter-vivos trust created by Connecticut residents. The Court noted that the superior court is "vested with the equitable power to approve an inter vivos trust accounting," but noted that the court's exercise of jurisdiction was "limited to deciding the propriety of the plaintiff's proposed accounting and the defendants' challenge thereto." *Id.* The Court held that Connecticut General Statutes § 52–59b,[1] the long arm statute which provides for specific jurisdiction over nonresidents and foreign partnerships in certain types of civil actions, was not applicable in that case, because the action did not arise from any acts committed by the defendants, but that nonetheless, the defendants had apparently waived any challenge to the court's exercise of personal jurisdiction over them. *Id.* at 40–41 & n. 7, 495 A.2d 1034; *see also Intermeat, Inc. v. American Poultry Inc.*, 575 F.2d 1017 (2d Cir.1978) (holding that New York's long arm statute conferring

---

1. The relevant portion of the statute provides:

(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, or over the executor or administrator of such nonresident individual or foreign partnership, who in person or through an agent: (1) Transacts any business within the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 1 of public act 99–160, or a computer network, as defined in subdivision (3) of subsection (a) of section 1 of public act 99–160, located within the state.

Conn.Gen.Stat. § 52–59b(a) (1999).

specific jurisdiction based on a defendant's acts was not applicable in an action commenced under New York's attachment law, and upholding the district court's exercise of personal jurisdiction over the defendant based on New York's attachment law). Similarly, in this case, section 52–59b is inapplicable as a basis for the exercise of personal jurisdiction over the Defendant, and, consequently, this Court may not exercise *in personam* jurisdiction over the Defendant.

Rather, we base our assertion of *quasi in rem* jurisdiction over the trust and any "parties interested in the account" on Connecticut General Statutes § 45a–175, which provides that a court "shall determine the rights of the fiduciaries in the account," and also provides for "notice of the hearing on the account to be given in such manner and to such parties as [the court] directs." Conn.Gen.Stat. § 45a–175(f). *Quasi in rem* jurisdiction is defined as the "type of jurisdiction of a court based on a person's interest in property within the jurisdiction of the court." Black's Law Dictionary 1245 (6th ed.1990). *Quasi in rem* proceedings are brought against the defendant personally, yet "it is the defendant's interest in the property that serves as the basis of the jurisdiction." *Id.* Here, the Plaintiff seeks to have the Court accept his accounting and declare his rights and responsibilities as trustee. Thus, the Court may exercise jurisdiction over the defendant, assuming proper notice has been given and due process is not offended, based on her interest as co-trustee and beneficiary in the trust.

Defendant, however, maintains that the trust should be administered in Florida, and that this Court has no jurisdiction over the trust. We disagree. Jurisdiction over the trust is based on Connecticut General Statutes § 45a–175(b), which provides that "[a] trustee ... of an inter vivos trust ... may make application to the court of probate for the district where the trustee ... has his or its principal place of business or to the court of probate for the district where the trustee or any one of them ... resides...." Conn.Gen.Stat. § 45a–175(b). The Plaintiff resides and has his principal place of business in the district in Connecticut in which he commenced this action. Thus, our assertion of subject matter jurisdiction and *quasi in rem* jurisdiction over the trust and the Defendant as an interested party in the trust is authorized by statute.

### 2. Constitutional due process

 Our next consideration is whether our exercise of jurisdiction over the Defendant comports with the due process clause of the Fourteenth Amendment. It is well settled that "[a] state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The minimum contacts doctrine applies to "all assertions of state court jurisdiction," whether *in personam* or *quasi in rem.* See *Shaffer v. Heitner,* 433 U.S. 186, 212, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Hanson v. Denckla,* 357 U.S. 235, 252–54, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (insufficient contacts between the defendant and the forum state); *Cargill Inc. v. Sabine Trading & Shipping Co., Inc.,* 756 F.2d 224, 228 n. 2 (2d Cir.1985) (*quasi in rem* jurisdiction); *United States Trust Co. v. Bohart,* 197 Conn. at 43, 495 A.2d 1034 (finding sufficient contacts between the non-resident trust beneficiaries and Connecticut in a trust accounting action). The contacts must be such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

A court may assert specific jurisdiction over a nonresident defendant if the defendant has "purposefully directed his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotation marks and citations omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 475, 105 S.Ct. 2174 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Physical presence in the forum state, however, is not required. *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174.

We have no difficulty in finding that the Defendant purposefully availed herself of the benefits and protections of the laws of the State of Connecticut by appointing the Plaintiff, a Connecticut resident, to serve as co-trustee of the inter vivos trust which she created and of which she is the sole beneficiary, and that she should have reasonably anticipated that she might be haled into court here. Therefore, we find that the Defendant has established sufficient contacts with the State such that our exercise of jurisdiction over her to the extent of her interest in the trust does not offend her due process rights.

Moreover, we do not believe that requiring the Defendant to present her objections, if any, to the Plaintiff's trust accounting in this forum would offend traditional notions of fundamental fairness and substantial justice, considering all the facts and relevant circumstances in this case. *See Burger King*, 471 U.S. at 477, 105 S.Ct. 2174. Although we recognize the burden placed on Defendant in defending this action in Connect-

icut, we balance that consideration against the Plaintiff's interest in submitting his trust accounting in a convenient forum and the State's significant interest in administering a trust accounting in which a Connecticut resident has an interest, and conclude that our assertion of jurisdiction does not violate the Defendant's due process rights.

■ The Defendant also argues that a choice of law provision in the trust agreement requires that venue be transferred to Florida. We disagree. The choice of law provision merely requires that the trust be interpreted according to Florida law. This Court is well able to apply the laws of Florida should interpretation of the trust become necessary. Although a choice of law provision may be relevant in determining whether a defendant has sufficient contacts with a forum to be subject to personal jurisdiction there, *see Burger King*, 471 U.S. at 481–82, 105 S.Ct. 2174, we do not believe the presence of a choice of law provision necessarily prevents courts in all other fora from exercising otherwise competent jurisdiction. Moreover, there does not appear to be a forum selection clause in the trust agreement which would require that accountings and other litigation concerning the trust be brought exclusively in the Florida courts. We hold that our assertion of *quasi in rem* jurisdiction over the trust and over the Defendant to the extent of her interest in the trust does not offend traditional notions of fundamental fairness and substantial justice, and thus, does not offend the Defendant's due process rights.

### 3. Sufficiency of Service of Process

Finally, the Defendant argues that she was not served with process when the Plaintiff instituted this action in the probate court. Plaintiff maintains that he satisfied Connecticut's probate rules by

serving the Defendant with notice of the hearing by registered mail delivered to the Defendant at her last-known address in Florida as well as to her attorneys of record.

■ Rule 4(e) of the Federal Rules of Civil Procedure provides, in relevant part, that service upon an individual may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State. . . ." Fed.R.Civ.P. 4(e). Thus, we look to Connecticut law to determine whether mail service is acceptable.

■ We have already determined that Connecticut General Statutes section 52–59b, the long-arm statute conferring specific personal jurisdiction over nonresidents based on certain conduct and specifying the appropriate method for service of process as to those nonresidents, does not apply to this *quasi in rem* action. *See infra* Part II.B.1. Furthermore, Connecticut General Statutes section 52–57, which specifies the manner of service upon residents of Connecticut, does not apply here.

Rather, we find authority for constructive service of process on the Defendant in Connecticut General Statutes section 52–68,[2] which provides for such notice to nonresident adverse or interested parties in *in rem* actions as the court deems reasonable.

In addition, the Connecticut statute authorizing the probate court's jurisdiction over accounts of fiduciaries provides that "[t]he court shall cause notice of the hearing on the account to be given in such manner and to such parties as it directs." Conn.Gen.Stat. § 45a–175(f). The probate court from which this matter was removed apparently deemed mail service to be an adequate method of providing notice to the Defendant, and Defendant concedes that she had actual notice of the proceedings.

We also note that service by mail satisfies the superior court's practice rules governing service of process. Section 10–13 of Connecticut's Practice Rules for the Superior Court provides that "[s]ervice upon the attorney or upon a pro se party . . . may be by delivering a copy or by mailing it to the last known address of the attorney or party. . . . Service by mail is complete upon mailing."

Considering all the circumstances of this case, including the fact that we are not asserting *in personam* jurisdiction over the Defendant, that she is a non-resident, and that she concedes that she had actual notice of the proceedings in the probate court, we find that service by registered mail was reasonable and thus complies with Connecticut law. Because mail service satisfies the rules of Connecticut's courts of general jurisdiction, such service also satisfies the Federal Rules of Civil

---

**2.** Connecticut General Statutes section 52–68, entitled "Notice to nonresident adverse or interested parties and interested parties unknown to plaintiff," provides:

(a) The superior court, and the judges, clerks and assistant clerks thereof, may, except where it is otherwise specially provided by law, make such order as is deemed reasonable, in regard to the notice which shall be given of the institution or pendency of all complaints, writs of error and appeals from probate, which may be brought to or pending in the superior court, when the adverse party, or any persons so interested

therein that they ought to be made parties thereto, reside out of the state, or when the names or residences of any such persons in interest are unknown to the party instituting the proceeding.

(b) Such notice, having been given and proved by the affidavit of the officer who served the notice or by other competent evidence, shall be deemed sufficient service and notice, and the court may proceed to a hearing, unless otherwise provided by law, or may order further notice as it deems reasonable.

Conn.Gen.Stat. § 52–68.

Procedure. Thus, we find that, although service by mail would not have been adequate to provide personal jurisdiction over the Defendant, it is sufficient to provide notice in this *quasi in rem* action. Defendant's motion to dismiss on this basis is denied.

### III. *Motion to Stay Proceedings*

The Plaintiff has moved to stay the proceedings in this Court pending a final judgment in the incapacity proceeding in the Florida circuit court. We discussed this issue in our ruling on the Plaintiff's motion to remand, *see supra* Part I.C., and concluded that should the Florida court find the Defendant to be incapacitated, this Court would appoint a guardian ad litem to protect her interests in this action. Although we saw no reason to remand on that basis, we are hesitant to proceed in this action until the matter of the Defendant's capacity is decided. Therefore, we grant the Plaintiff's motion to stay the proceedings pending the outcome of the Florida action.

### *CONCLUSION*

For the foregoing reasons, the Plaintiff's motion to remand [**Doc. # 10**] is DENIED. The Defendant's motion to dismiss [**Doc. # 5**] and amended motion to dismiss [**Doc. # 15**] are DENIED. The Plaintiff's motion to stay the proceedings [**Doc. # 22**] is GRANTED.

SO ORDERED.